## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

Gerardo Franceschi,
  Plaintiff,

    v.

Department of Veteran Affairs, et al.,
  Defendants.

Civil No. 04-1746 (HL)

## OPINION AND ORDER

Plaintiff Gerardo Franceschi brings this action against the Department of Veteran Affairs and Anthony J. Principi  pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., alleging discrimination based on his gender[1], a hostile work environment, and retaliation.  Pending before the Court is Defendants' motion for summary judgment (Dkt. No. 26) and Plaintiff's opposition to said motion (Dkt. No. 40).  Defendants move for summary judgment on the grounds that (1) Plaintiff has failed to exhaust administrative remedies as required by Title VII, (2) Plaintiff has not established a prima facie case of gender discrimination or shown that he was subjected to hostile work conditions due to his gender in violation of Title VII, and (3) Plaintiff has not shown he was retaliated against for filing such claims.  For the reasons set forth below, Defendants' motion for summary judgment is hereby **granted**.

## BACKGROUND

[1]Though the pleadings allege discrimination and harassment based on sex, a review of the record shows Plaintiff's allegations are better classified as relating to gender.

Plaintiff Gerardo Franceschi ("Franceschi") began working as a physician under the Ambulatory Care Service of the San Juan VA Medical Center (the "hospital") in January 1994. In December 1997 he was appointed to the position of Associate Chief of Staff for the Ambulatory Care Service and when the position of Chief of Staff became vacant in May 2001 Franceschi applied for the promotion. After interviewing multiple candidates, the position was ultimately awarded to Dr. Sandra Gracia-Lopez in January 2002.

Upon assumption of the position, Dr. Sandra Gracia was appraised of the fact that the hospital had numerous shortcomings and deficiencies in its clinical performance measures and had the lowest score as compared to other network hospitals. Despite possessing the capabilities to implement the system used by other hospitals to monitor these performance measures, the system was not in place at the San Juan VA Medical Center. It was Franceschi's responsibility to oversee this improvement, yet he did not carry out the task and the Chief of Staff had to reassign these projects to someone else. Additionally there were problems with overcrowding and prolonged stays in acute care beds and excessive delays in the processing of compensation and pension claims, all areas of hospital management that also fell under Franceschi's responsibilities.

Franceschi consistently requested additional personnel and resources to address the problems. His requests could not be accommodated due to administrative constraints. However, Plaintiff refused to explore other alternatives. Dr. Sandra Gracia attempted to work with Franceschi to resolve these problems and made suggestions to combat challenges such as under-staffing. Plaintiff, however, continued to disregard established procedures, was consistently absent from committee meetings, director's meetings, and staff meetings, and

2

refused to address problems through the proper communication channels. The hospital administration received complaints from staff regarding Franceschi's management practices, his use of foul and offensive language, and his unfair favoritism of a female employee under his supervision with whom he had begun an intimate relationship.

In a performance evaluation given on March 4, 2003 Dr. Sandra Gracia identified these deficiencies to Plaintiff and specifically discussed his failure to meet goals in reducing the processing time for compensation and pension claims, his absence from conferences and meetings, his failure to explore alternatives to overcoming staffing and resource constraints, his refusal to follow established hospital procedures and respect established communication channels, his mismanagement of staff, the significant decreases in hospital performance measures, and the fact that the hospital continued to possess the lowest compliance score in the network. Franceschi was given an evaluation score of "high satisfactory" for the preceding year.

In April 2003 the hospital's Equal Employment Opportunity ("EEO") Manager and Compliance Officer met with Franceschi to discuss complaints regarding his personal relationship with a female staff member. Franceschi admitted the relationship and was cautioned to control the situation and make adjustments in his behavior at work. No official action was taken by the hospital at this time. In May 2003 another meeting was held to address concerns that hospital staff were going to file a report with the Inspector General concerning Franceschi's relationship with the female subordinate and on the fact that no official action had been taken against them. Complaints from staff continued through August 2003. An additional meeting was held in October 2003 to discuss transferring the female subordinate with whom

Franceschi was intimately involved to another office.

Meanwhile, in July 2003, Dr. Sandra Gracia again notified Franceschi that hospital performance measures had not improved and she requested specific tasks to be performed by Franceschi during the months of July-September to address this problem.  During this time Franceschi continued to be absent from mandatory meetings concerning these hospital performance measures.  Dr. Sandra Gracia brought his unexcused absences, which by then extended beyond committee meetings to attendance problems during regular work hours, to his attention in July 2003 and again in writing in August 2003.  Plaintiff argues that Dr. Sandra Gracia denied his request for annual leave while approving such requests from one of his subordinates.

Plaintiff expressed his concerns over his relationship with Dr. Sandra Gracia in a memorandum addressed to the Center Director in August 2003, in which he complained of feeling harassed, pursued and frustrated by Dr. Sandra Gracia and offered his resignation. Within days Dr. Sandra Gracia met with Franceschi to address his concerns and explain her position. According to Plaintiff, she refused to transfer him to a different position under a different Service.  As a result of a series of meetings over the following months regarding these issues, Franceschi decided to resume his position as Associate Chief of Staff for Ambulatory Care.

In October 2003 Plaintiff was again counseled regarding the lack of improvement in his Service's performance measures as well as his inappropriate treatment of staff.  The Chief of Staff provided suggestions for improvement and gave him a 60 day probationary period in which to improve, with the warning that lack of compliance would result in a unsatisfactory

proficiency rating.  In December 2003 Dr. Sandra Gracia met again with Plaintiff and informed him there was no significant improvement.  Franceschi's proficiency rating of March 2004 reflected an overall rating of "low satisfactory".  In a subsequent meeting regarding this low evaluation, Plaintiff was again given a 60 day period in which to improve, and informed a special evaluation would be given at the end of said period to address any improvements he did make and to change his rating to reflect a higher score.  Unsatisfactory progress during the period would result in action being taken by the hospital. Plaintiff objected to his proficiency report, but an internal review by the Center Director concluded that there was no evidence to sustain Plaintiff's allegations of harassment from Dr. Sandra Gracia and that Dr. Gracia's evaluations of Plaintiff were supported by objective data and documented fact.

Plaintiff's work continued to be deficient during the probationary period despite reminders and warnings from the Chief of Staff. Hospital administrators continued to receive complaints from staff regarding his behavior.  During the months of May and June 2004 improvements in Plaintiff's Service were noted, but scores still continued to fall in the unsatisfactory range.  Probation periods were continuously extended, while measures of Plaintiff's performance again continued to decline.  Plaintiff argues the changes required more than 60 days to implement and the probationary period was not long enough to obtain results. Finally, in July 2004 Plaintiff was given a rating of "unsatisfactory" on his performance evaluation and was reassigned to the position of Staff Physician under the Ambulatory Care Service.

During her initial tenure as Chief of Staff, Dr. Sandra Gracia also changed the evaluation rating of a female Service Chief, as well as allowed an initially low-scoring male employee to

remain in his position once he improved performance measures.

Plaintiff established contact with an EEO Counselor in January 2004 and was given a written copy of his rights and responsibilities regarding his EEO claim, which he signed on February 11, 2004.  Despite requests for additional information, Plaintiff, through his attorney, failed to provide the information requested or actively pursue the claim. Plaintiff claims he was fully cooperative with the process.  A formal EEO complaint was filed on March 26, 2004 alleging Plaintiff was the victim of harassment and discrimination because of his gender by Chief of Staff Sandra Gracia.   On July 16, 2004 Plaintiff was notified that an Equal Employment Opportunity Commission ("EEOC") investigator had been assigned to his case and was asked to provide additional information so that the claim could be properly investigated. The EEO investigation was not completed nor was Plaintiff issued a final disposition of the matter.  Plaintiff commenced this lawsuit in the United States District Court for the District of Puerto Rico on July 22, 2004.  On July 30, 2004 Plaintiff's attorney informed the EEOC investigator that Franceschi had filed a lawsuit, due to which he was not participating in the EEOC investigation.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of fact exists if there is sufficient evidence supporting

the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir. 1993). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine" the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the [nonmoving] party's position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

In deciding a motion for summary judgment, the Court shall review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmovant's favor. *LeBlanc* at 841. The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has satisfied the threshold requirement, the burden shifts to the nonmoving party to present facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson* at 256. The nonmovant may not rest on mere conclusory allegations or wholesale denials. *See* Fed.R.Civ.P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir. 1995). Furthermore, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To aid the Court in the task of identifying genuine issues of material fact in the

record, the District for Puerto Rico has adopted Local Rule 56 (formerly Local Rule 311.12). D.P.R. L.Civ.R 56(b)-(c). Local Rule 56(b) requires that a party moving for summary judgment submit in support of the motion, a separate, short, and concise statement of material facts as to which the moving party contends there is no genuine issue to be tried. The moving party shall also provide the basis of such contention as to each material fact, properly supported by specific reference to the record. *Id.; see also Leary,* 58 F.3d at 751. Further, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation . . ." D.P.R. L.Civ.R 56(c).

The Court will only consider the facts alleged in the parties' Local Rule 56 statements when entertaining the movant's arguments. *Rivera v. Telefonica de Puerto Rico*, 913 F. Supp. 81, 85 (D.P.R. 1995). Where the party opposing summary judgment fails to comply with the rule's requirements, the district court is permitted to treat the moving party's statement of facts as uncontested. D.P.R. L.Civ.R 56(c); *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 80 (1st Cir. 2005). "Parties ignore [such rules] at their peril. *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000).  In the instant matter Plaintiff has failed to deny or qualify any of Defendant-Movant's proffered statement of uncontested facts in a separate document as required by Local Rule 56.  Rather, Plaintiff filed his own statement of uncontested facts which does not relate to or reference Defendants' statement of facts.  The First Circuit "has held

repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules." *Fontanez-Nunez v. Janssen Ortho LLC,* 447 F.3d 50, 55 (1st Cir. 2006) (quoting *Torres-Rosado v. Rotger-Sabat,* 335 F.3d 1,4 (1st Cir. 2003). As such, the Court accepts Defendant's uncontested facts, where supported by the record, as true and admitted. This does not end the Court's inquiry, however, as the moving party still must show they are entitled to summary judgment.

**DISCUSSION**

**I. Gender Discrimination and Harassment Claims under Title VII**

Title VII of the Civil Rights Act of 1964 protects federal government employees and applicants from discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-16(a). However, judicial recourse under Title VII is not a remedy of first resort. *Morales-Vallellanes v. Potter*, 339 F.3d 9, 18 (1st Cir. 2003). An aggrieved party must first exhaust administrative remedies by filing a complaint with the employing agency before bringing a civil action for such claims. *Brown v. General Servs. Admin*., 425 U.S. 820, 832 (1976). 42 U.S.C.S. § 2000e-16(c) clearly states that a civil claim may be brought within 90 days of notice of final action being taken by an administrative department, agency or unit, or after 180 days from the filing of an initial charge if there is a failure to take action on the administrative complaint. Thus "an employee may commence a civil action against [his] employer if, and only if, the EEOC has dismissed the administrative complaint or has itself failed to begin a civil action withing 180 days of the original EEOC filing." *Jorge v. Rumsfeld,* 404 F.3d 556, 564 (1st Cir. 2005).

The record indicates Plaintiff filed a formal complaint with the EEOC alleging sex discrimination and harassment on March 26, 2004.   Hence, absent final action by the EEOC, Plaintiff was barred from resorting to the federal courts until the 180 day waiting period elapsed, in this case on September 22, 2004. There was no final disposition issued by the EEOC with regards to Plaintiff's claim.  Rather, the EEOC had just begun their investigation when Plaintiff ceased to cooperate and instead commenced this lawsuit[2].  It is well established case law that a plaintiff's failure to cooperate at the administrative level amounts to inexhaustion of the remedy. *See Johnson v. Bergland,* 614 F.2d 415 (5th Cir. 1980); *Jordan v. United States,* 522 F.2d 1128 (8th Cir. 1985); *Vinieratos v. United States,* 939 F.2d 762 (9th Cir. 1991).  "...[A]n administrative exhaustion rule is meaningless if claimants may impede and abandon the administrative process and yet still be heard in the federal courts." *Vinieratos* at 772.  By prematurely filing this civil lawsuit on July 22, 2004 Plaintiff has not exhausted administrative remedies, thus failing to comply with the statutory requirements of Title VII.  "In a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." *Jorge* at 564.

Plaintiff attempts to justify this premature filing by arguing that an internal memorandum sent by Franceschi to the Center Director in August 2003 should qualify as an official EEO complaint. This notion is disingenuous.  First, given that the memorandum is not cited or documented by Plaintiff in his response to the motion for summary judgment or his statement

---

[2]See Defendant's fact #15 (Dkt. No. 27-1), which reads "..on July 30, 2004 the plaintiff's attorney informed the EEO Investigator that the plaintiff had filed a lawsuit the previous week due to which the plaintiff did not participate in the EEO Investigation."  Plaintiff does not deny, qualify, or otherwise object to this assertion as required by Local Rule 56(c) (*see* discussion *supra* at p. 8).  Accordingly, the submitted fact that Plaintiff refused to cooperate with the EEO investigation is deemed uncontested.

of facts, nor provided among the exhibits filed on his behalf, the Court cannot ascertain with certainty to what memorandum Plaintiff is referring[3]. To reiterate the aforementioned standard, the Court will only consider the facts alleged in the parties' Local Rule 56 statements when entertaining the arguments. *Rivera*, 913 F. Supp. at 85. Second, aside from the fact that this supposed memorandum is completely unsubstantiated in Plaintiff's pleading, there is no basis whatsoever for the Court to acknowledge a memorandum sent internally through the hospital administration as a formal EEO complaint.

The Court need not inquire any further into the substantive Title VII claims gender discrimination, as Plaintiff fails to cross the procedural threshold for filing such an action. The Court notes, however, that even if Plaintiff's Title VII claims were viable, there is insufficient evidence in the record to support such a claim. In order to sustain a Title VII cause of action a plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).  There is simply no evidence before the Court which demonstrates that Dr. Sandra Gracia's treatment of Franceschi was at all related to his gender. Accordingly, discrimination and harassment claims asserted under Title VII are hereby **dismissed** due to Plaintiff's failure to exhaust administrative remedies.

## II.  Retaliation Claims

According to the record, Plaintiff first established contact with an EEOC representative in January 2004 and filed a formal EEO complaint alleging sex discrimination in March 2004.

---

[3]The Court has before it an August 2003 memorandum addressed to the Center Director which was provided among Defendant's exhibits.  However, said memorandum makes no mention whatsoever of sex or gender nor does it make any reference to the EEOC.  Even if this is the memorandum to which Plaintiff is referring, it in no way suffices as an EEO claim.

Plaintiff has not submitted any direct evidence of reprisal, but merely points to the lowering of his performance rating to "low satisfactory" in March 2004 as evidence of retaliation. "When only circumstantial evidence of discriminatory retaliation is available, the *McDonnell Douglas*[4] burden shifting analysis is...utilized." *Rojas v. Principi*, 326 F. Supp. 2d 267, 279-80 (D.P.R. 2004). Under this analysis, Plaintiff must make a prima facie showing of retaliation by establishing 1) that Plaintiff engaged in a protected activity; 2) that he suffered an adverse employment action; and 3) that the adverse action is causally connected to the protected activity. *Che v. Massachusetts Bay Transportation Authority*, 342 F.3d 31, 37 (1st Cir. 2003). Upon such a prima facie showing, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the action in question. *Id.* at 39.

It is uncontested that Plaintiff's filing of an EEO complaint in March 2004 is a protected activity. Assuming Franceschi suffered an adverse employment action, to wit being issued a "low satisfactory" performance rating on his March 2004 evaluation, Plaintiff must show that these two factors were causally related. It is this third step of the analysis that has not been met. The evidence simply does not establish that Franceschi's poor evaluation was at all related to him having filed an EEO claim. Franceschi's poor performance at work and the Chief of Staff's attention to such was clearly documented long before the EEO complaint was filed. The facts, uncontested by Franceschi, show his behavior was flagged as early as January 2002 when Dr. Sandra Gracia first assumed the Chief of Staff position and was informed the hospital was one of the lowest-scoring in the network. Franceschi received numerous warnings and probationary periods over the period from 2002-2004, including a specific warning that his rating would be

---

[4]*See McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973).

lowered in March 2004 if the results of the preceding probationary period were not satisfactory. In fact, Plaintiff's low evaluation could have easily been noted during his review in October 2003 or December 2003, well before any EEOC contact was established, but the Chief of Staff extended him an additional grace period in which to improve his behavior.

Even if the Court were to accept that Franceschi's low rating was causally related to his filing of the discrimination claim, Defendant has established with abundance a legitimate, non-discriminatory reason for the action. The facts in record demonstrate a pattern of incompetence and uncooperative behavior by Franceschi at work and a failure to fulfill his job responsibilities. Only after numerous warnings and probationary periods, during which Franceschi made no effort to improve, did the Chief of Staff alter his performance rating and ultimately change his job position. There is nothing in the record to suggest that any of these problems were related to Franceschi's gender nor to the fact that he filed a (largely unsubstantiated) EEOC complaint. Rather, there is ample support for the notion that changes in Franceschi's performance evaluations and job status were due to his sub-par job performance.

Moreover, Plaintiff himself proffers that Dr. Sandra Gracia found him "unmanageable" and "difficult to supervise" and even refers to himself in pleadings as a "chauvinist pig"[5]. He further hypothesizes that Dr. Gracia had animosity towards him because he had competed against her for the position of Chief of Staff (an argument that is weak at best, given that Dr. Gracia was actually awarded the position). Significantly, Plaintiff, in his own brief categorizes the tension as a personality conflict[6]. Even when viewed in the light most favorable to Plaintiff, the Court

---

[5]*See* Dkt. No. 42 at 13.

[6]*Id.*

cannot see how Dr. Sandra Gracia's treatment of Franceschi was at all related to his complaint

to the EEOC, much less that such treatment rose to the level required to establish a prima facie

case of retaliation.  The Court finds no evidence from which a reasonable jury could find that

Plaintiff's poor evaluation was in retaliation for him having filed a discrimination complaint.

**CONCLUSION**

In view of the aforementioned, the Court hereby **grants** the Department of Veteran

Affairs' motion for summary judgment as to the retaliation claim and **dismisses** the Title VII

claims for failure to exhaust administrative remedies. Judgment dismissing this case shall be

entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 26, 2006.

S/ HECTOR M. LAFFITTE
Senior United States District Judge